IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00110-CV

 

In the
Interest of K.A.J. and Z. J., Children

 

 

 



From the County Court at Law No.
1

Johnson County, Texas

Trial Court No. D200500214

 



MEMORANDUM  Opinion










 

            Appellant filed a notice of appeal to
the agreed termination of the parental rights of B.J. (biological father to
K.A.J.) and A.J. (biological mother to K.A.J.).  Appellant is the mother of
B.J.  Appellant was not a party to the termination proceeding.  Appellees filed
motions to dismiss.  In all, three such motions were filed.  One Appellee also
filed a motion for damages.

            For several reasons mentioned below,
this appeal is dismissed.  In the alternative, the trial court’s judgment is
affirmed.

            The Clerk of this Court notified
Appellant by letter dated April 25, 2007 of various defects regarding her
appeal.  The first defect noted was that her appeal was subject to dismissal
for want of jurisdiction because Appellant’s notice of appeal was untimely.  See
Tex. R. App. P. 26.1(b), 42.3(a),
44.3; Tex. Fam Code Ann. §
109.002(a) (Vernon 2002).  The Clerk further explained that a motion for
extension of time to file the notice of appeal is implied if Appellant files a
notice of appeal within 15 days of the date the notice is due; but Appellant
must still supply a reasonable explanation for the late filing of the notice of
appeal.  See Verburgt v. Dorner, 959 S.W.2d 615, 617 (Tex. 1997).  The Clerk warned Appellant that the Court may dismiss the appeal unless,
within 21 days of the date of the letter, a response is filed showing grounds
for continuing the appeal.  

            More than 21 days have passed and,
although Appellant filed a motion for extension of time to file a notice of
appeal, Appellant did not provide the Court with a reasonable explanation for
the untimely filing of the notice of appeal.  Appellant explains what happened
between the judgment and filing the notice of appeal.  But simply explaining
what was going on is not a reasonable explanation of why the notice of appeal
was not timely filed.  For this reason, we have no jurisdiction and dismiss the
appeal.

            The second defect noted by the Clerk
was that her appeal was also subject to dismissal for want of jurisdiction
because Appellant may not have standing to bring the appeal.  The Clerk noted
that according to the docketing statement, an agreed order of termination was
signed on March 13, 2007, and Appellant filed a motion for intervention on
March 21, 2007.  These facts indicated to the Clerk that Appellant may not be a
party to the appeal.  The Clerk warned Appellant that the Court may dismiss the
appeal unless, within 21 days of the date of the letter, a response is filed
showing grounds for continuing the appeal.  See Tex. R. App. P. 42.3(a), 44.3.

            Appellees raised the issue of standing
as well in their motions to dismiss.  In the motions, Appellees argue that
section 153.434 of the Texas Family Code bars Appellant from the relief she
sought in the trial court – grandparent access and possession.  Section 153.434
provides that a biological or adoptive grandparent may not request possession
of or access to a grandchild if (1) each of the biological parents of the
grandchild has had the person's parental rights terminated, or executed an
affidavit of waiver of interest in the child or an affidavit of relinquishment
of parental rights under Chapter 161 and the affidavit designates an authorized
agency, licensed child-placing agency, or person other than the child's
stepparent as the managing conservator of the child; and (2) the grandchild has
been adopted, or is the subject of a pending suit for adoption, by a person
other than the child's stepparent.  Tex.
Fam. Code Ann. §153.434 (Vernon Supp. 2006).  Appellees assert that each
of these statutory conditions was met and recited in the Agreed Order of
Termination signed by the trial court on March 13, 2007.  Appellees are
correct.

            Appellant has not responded to either
the Clerk’s jurisdictional inquiry regarding standing or the Appellees’ motions
to dismiss.  We have determined that Appellant does not have standing to pursue
her appeal.  Therefore, Appellees’ motions are granted, and for this reason,
the appeal is also dismissed.

            Further, because Appellant failed to
timely respond to our jurisdictional inquiry regarding standing to pursue this
appeal, we dismiss this appeal.

            Finally, the third defect noted by the
Clerk was that there was no indication that Appellant filed a statement of
points as required by the Texas Family Code.  See Tex. Fam. Code Ann. § 263.405(b) (Vernon Supp. 2006).  Appellant did not respond to the Clerk’s inquiry.  Because Appellant
failed to provide an explanation as to how the Court could consider any issue
not raised by a statement of points, we dismiss the appeal for this reason as
well.

            In the alternative, the trial court’s
judgment is affirmed.  The clerk’s record was filed on May 1, 2007.  No
statement of points has been included in the record presented on appeal.  The
Clerk warned Appellant in the April 25 letter that we would affirm the trial
court’s judgment unless, within 21 days from the date of the letter, Appellant
filed a response showing grounds for this Court to consider any issue that was
not raised in a statement of points.  More than 21 days have passed and
Appellant has not responded to the Clerk’s inquiry.  Under the express terms of
the statute, we cannot consider any potential issue Appellant might bring.  See
Tex. Fam. Code Ann. § 263.405(i)
(Vernon Supp. 2006); In re E.A.R., 201 S.W.3d 813, 814 (Tex. App.—Waco 2006, no pet.).  Therefore, if, we are wrong in dismissing the appeal for
the reasons stated above, we affirm the trial court’s judgment.  

            Appellee’s motion for damages is
denied.  Any other relief requested in the various pending motions is
dismissed.

 

                                                                                    TOM
GRAY

                                                                                    Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Vance, and

            Justice
Reyna

            (Justice
Vance concurs in the judgment of dismissal with a note)*

Appeal
dismissed; or alternatively, affirmed

Opinion
delivered and filed June 13, 2007

[CV06]            

 

            *
“(I join the opinion only to the extent of the first stated reason for
dismissal, i.e. failure to file a timely notice of appeal and explain
why it was not timely.)”






ehicle encompasses two conduct elements.


 The
offense not only requires "forbidden conduct," but also knowledge of the "attendant
circumstances" of the offense.


 The "forbidden conduct" is the knowing operation of the vehicle.


 
In order to have knowledge of the "attendant circumstances", the defendant must be aware that the
operation of the vehicle is without the owner's consent.


 As a result, we must review the evidence
in the light most favorable to the verdict to determine whether any rational trier of fact could have
found, beyond a reasonable doubt, that Childers knew he did not have the effective consent of the
owner to operate the vehicle.



      Russell Giles, a used car dealer in Waco, testified that she purchased a Pontiac Grand Prix
on September 9, 1992. Giles sent the vehicle to a nearby detail shop but had to tow the car back
to her lot that afternoon because the keys "turned up missing" while the vehicle was being cleaned. 
According to Giles, the car was left locked inside the fenced car lot that evening. The next
morning, after receiving a call from the Waco Police Department, she went to check on her car
lot. She found that the fence had been cut from top to bottom with wire cutters and the Grand Prix
was gone. When the vehicle was returned to her by the police, it had a set of keys in it, but Giles
could not remember whether they worked in the Grand Prix. According to Giles, the turn signal
switch was torn off the steering column. Giles testified that she did not give Childers or anyone
else permission to drive the Grand Prix on either September 9 or 10. Finally, she testified that
she had seen Childers "hang out" at detail shops, including the one across the street from her
office.
      Officer Gilberto Limon, a Waco police officer, testified that in the early morning hours of
September 10 he saw a vehicle with an expired vehicle registration sticker being driven by a man
who was not wearing a seat belt. He activated his overhead lights and stopped the vehicle. 
According to Limon, as he got out of his patrol car, both the driver, whom he identified as
Childers, and the passenger got out of the Pontiac Grand Prix and started to approach him. 
Childers was talking loudly to the officer. Limon testified that he saw a glove on Childers' right
hand, which was holding a white piece of paper. After two other officers arrived, Limon asked
Childers what he was holding in his hand. Childers then "bolted and ran." The officers caught
Childers after chasing him for a block-and-a-half down an alleyway. According to Limon, when
he asked Childers whether he owned the car, Childers responded that he had purchased it the day
before, and that he had the title to the vehicle, but it was not with him. Limon also testified that
Childers initially gave him a fictitious name. Furthermore, Childers claimed that he did not know
the identify of his passenger, who had disappeared by the time they returned to the scene. Limon
found two screw drivers in the vehicle. Also, the steering column was "partially busted, as if
somebody was tampering with" it. Additionally, the keys in the ignition switch did not work on
the vehicle. On cross-examination Limon testified that the car was probably started with the two
screw drivers and the keys in the ignition switch were there to avoid suspicion in case a police
officer came.
      Stephen January, an officer with the Waco Police Department, testified that he assisted Limon
in Childers' arrest. According to January, Childers was holding something that looked like a
white cloth in his hand. Although January could not tell whether Childers had something wrapped
in the cloth, he could have possibly concealed a pair of wire cutters in it. January also testified
that the keys in the ignition switch did not operate the vehicle.
      Unlike the facts of the case in Herbert v. State,


 the attendant circumstances surrounding
Childers' operation of the vehicle, as well as his claimed ownership of the vehicle and his attempt
to conceal his true identity, were such that any rational trier of fact could have found beyond a
reasonable doubt that Childers knew he did not have the effective consent of the owner to operate
the vehicle.


 Accordingly, we overrule point of error one.
      In point two Childers contends that the trial court committed fundamental error in failing to
instruct the jury on mistake of fact. According to Childers, his trial counsel's strategy was
directed at raising the mistake-of-fact defense. Childers' called Carl Daniel to testify that on
September 10 he saw a man "turn over the vehicle" to Childers at the Parkside apartments. The
man wanted Childers to rent the Grand Prix, and Daniel saw Childers drive off in the vehicle. On
cross-examination Daniel testified that he would not rent a car from someone he had never seen
before. He also acknowledged that there are a number of stolen cars around the Parkside
apartments and that "they get rented out a lot." Because it is not uncommon for a person who
lives at Parkside to rent a car from someone else who lives there, Daniel did not think anything
unusual about Childers renting such a car.
      Clifton Rivers, a resident of the Parkside apartments, testified that he saw Childers rent the
Pontiac Grand Prix for twenty dollars and drive off. According to Rivers, the vehicle's engine
was already running when Childers got in. When asked on cross-examination whether one "can
rent stolen cars pretty easy in that area," Rivers responded, "They come by all the time."
      Finally, Childers called Ruby Diles, also a resident of Parkside, to testify that it is a common
practice to rent cars from other people at Parkside. On cross-examination, Diles testified that she
had no idea whether "a lot of those cars that are rented out there are stolen."
      Defense counsel expressly stated that he had no objection to the court's charge to the jury. 
On appeal, however, Childers argues that the trial court's error in failing to instruct the jury on
mistake of fact was so egregious and created such harm that it denied him the right to a fair and
impartial trial.


 A mistake of fact instruction may be proper in an unauthorized use of a motor
vehicle case when it relates to the "attendant circumstances" of the crime.


 Specifically, such an
instruction is deemed proper when the defendant alleges that he has been given permission to
operate the vehicle by a third party he believes to be the owner.


 In Gardner, the appellant
testified that he borrowed the stolen vehicle from a friend and that he believed the friend was the
true owner of the vehicle.


 Furthermore, the arresting officer in Gardner testified that, when
questioned about the vehicle, the appellant claimed to have borrowed it from a friend.


 In this
case, however, Childers did not testify or offer any other evidence that he believed the vehicle
belonged to the person from whom he obtained the vehicle. More importantly, the arresting
officer testified that Childers claimed to be the titled owner of the vehicle, a claim not supported
by the three defense witnesses. Finally, we note that the testimony of the witnesses called on
Childers' behalf failed to raise any evidence that he formed a reasonable belief that the man from
whom he rented the vehicle was the true owner. Two of the witnesses acknowledged that it was
common practice in that area to rent stolen vehicles, and the third said that she had no idea
whether such cars were stolen. We hold that, because the defense of mistake of fact was not
raised by the evidence, the trial court did not err in refusing to instruct the jury on it.


 However,
even if the charge was erroneous, the error was not so egregious nor did it create such harm that
Childers did not have a fair and impartial trial. Both parties' closing arguments were consistent
with the proposition that the State had to prove that Childers knew he did not have the effective
consent of the owner to operate the vehicle in order to obtain a conviction.


 Accordingly, we
overrule point of error two.
      We affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed June 8, 1994
Do not publish